UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | Cr. No.: 8:10-cr-536-GRA-2 |
| | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | (Written Opinion) |
| | ) | |
| Orlando George Griffith, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the Court on Defendant's Motion to Suppress evidence derived from the search of his vehicle during a traffic stop. For the foregoing reasons, Defendant's Motion to Suppress is DENIED.

Facts

On the evening of April 7, 2010, Officer Joseph Hand (Officer Hand), a South Carolina State Transport Police (SCSTP) officer, was patrolling Interstate 85 in Anderson County when he observed a vehicle approaching him from behind at a high rate of speed. Officer Hand activated his rear antenna and noted that it issued a speed measurement of 85 miles per hour for the vehicle, a black Ford Escape. The speed limit for that stretch of highway was 65 miles per hour. Following his usual protocol, Officer Hand allowed the vehicle to pull up beside him, performed a visual inspection of the interior of the vehicle, slowed his vehicle down, pulled behind the Ford Escape, activated his blue lights, and initiated the traffic stop. The

Ford Escape was driven by Kenneth Howard and was also occupied by Defendant. Officer Hand's video recording equipment captured the traffic stop on video (the video[1]).

During the traffic stop, Officer Hand asked for both Howard and Defendant's licenses, called in their information to check for outstanding warrants, and reviewed the vehicle's rental agreement. Meanwhile, another officer arrived at the traffic stop to assist Officer Hand. Approximately seventeen minutes after initiating the traffic stop, Officer Hand issued Howard a warning for speeding and returned Howard's license and the vehicle's rental agreement. After asking Howard if he had any questions about the warning, Officer Hand asked Howard if he had anything illegal in the vehicle. After Howard responded that he did not, Officer Hand asked Howard if he would consent to a search of the vehicle. Howard answered that the car was not his because Defendant had rented the vehicle. Officer Hand then proceeded to the passenger side of the vehicle, handed Defendant his license, and explained that he had returned the rental agreement to Howard. Officer Hand then asked, "Do you have a problem with me searching the truck?" Defendant responded with a barely audible "no." Officer Hand then asked, "You don't?" No answer to that question is heard on the video. Immediately after asking that question, Officer Hand asked Defendant to step out of the vehicle.

---

[1] Joint Exhibit 1.

During a search of the vehicle, a brown wallet was recovered. Inside the wallet were six (6) counterfeit credit cards embossed with the name Mark Smith and multiple Wal-Mart gift cards. When asked who Mark Smith was, Defendant said he was a friend. When asked for Mark Smith's telephone number, Defendant explained that Mark Smith was actually a friend of a friend. As officers continued the consent search, they noticed other gift cards scattered about the vehicle. Officers then summoned United States Secret Service agents. Upon arrival, the agents read Howard and Defendant their *Miranda* rights. Defendant invoked his right to counsel shortly thereafter. Secret Service arrested Defendant and Howard for conspiracy to commit access device fraud and related charges.

## Analysis

Defendant makes three main arguments: (1) that the traffic stop was pretextual; (2) that the search of the vehicle violated Defendant's Fourth Amendment rights; and (3) that the questioning of Defendant at the traffic stop violated his Fifth Amendment rights. This Court holds that Officer Hand had probable cause to believe Howard had committed a traffic violation when he stopped Defendant and Howard, that the vehicle search was proper because Defendant freely and voluntarily gave consent to Officer Hand to search his vehicle during a consensual encounter, and that questioning Defendant before he was Mirandized at the traffic stop did not violate Defendant's rights.

I.

The vehicle stop was based on probable cause. Because temporary detention of individuals during a traffic stop is a seizure under the Fourth Amendment, the decision to conduct the traffic stop must be reasonable. *See Whren v. United States*, 517 U.S. 806, 810 (1996). "[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id; see also United States v. Hassan El*, 5 F.3d 726, 730 (4th Cir. 1993) ("'When an officer observes a traffic offense—however minor—he has probable cause to stop the driver of the vehicle.'" (quoting *United States v. Cummins*, 920 F.2d 498, 500–01 (8th Cir. 1990))).

Here, Officer Hand had probable cause to believe the driver of the vehicle was violating traffic laws by driving the vehicle twenty miles over the posted speed limit. Officer Hand observed the vehicle driving up behind him at a high rate of speed, and he verified his observations with a speed reading from his rear antenna. The fact that the driver was issued a warning instead of a citation has no bearing on whether Officer Hand had probable cause to stop the driver of the vehicle. As Officer Hand testified, officers have discretion regarding whether to issue a warning or citation. Additionally, Defendant's argument that the stop was pretextual[2] fails.

---

[2] Defendant argues that his traffic stop was initiated without "reasons or probable cause," evidenced by the fact that law enforcement failed to "furnish any video or audio tape of the events leading up to this vehicle's traffic stop." (Supportive Reasons for Suppression Motion 1, ECF No. 91.) However, South Carolina law does not require a law enforcement officer turn on his video recording equipment until after he has activated his blue lights or as soon as

Howard, the driver, admitted on the video that he was going 80 miles per hour in a 65 miles per hour zone. (Jt. Ex. 1, 22:12:25–22:12:34.)

II.

In addition, the search of Defendant's vehicle subject to Defendant's consent did not violate Defendant's Fourth Amendment rights. Defendant makes three arguments regarding the consent to search: (1) that he never gave consent to Officer Hand; (2) that the consent, if given, was not voluntary; and (3) that even if the original stop was not pretextual, the officers' investigation exceeded the proper scope of the traffic stop.

A.

As to Defendant's first argument, this Court holds that Defendant did give consent to search his vehicle.

Under the Fourth and Fourteenth Amendments, a search that is conducted without a warrant is *per se* unreasonable. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). A well-recognized exception to the warrant requirement is a

---

video recording is practicable under the circumstances. *See* S.C. Code § 56-5-2953 (B) (directing courts not to dismiss a case merely because the officer failed to activate his video recording equipment when he activated his blue lights and noting that "as soon as video recording is practicable in these circumstances, video recording must begin and conform with the provisions of this section"). Therefore, the sequence of events for a traffic stop include an officer witnessing or suspecting a violation of law, turning on his blue lights, and then turning on his video recording equipment. If the law meant to require officers to record evidence of the actual traffic violation, the law would require officers to start recording prior to turning on their blue lights.

search conducted pursuant to consent. *Id.* (citing *Davis v. United States*, 328 U.S. 582, 593–94 (1946)). When the Government relies on consent to justify the legality of the search, it has the burden of proving that the consent was given freely and voluntarily. *Id.* at 222 (citing *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968)). The Government must prove that the person who gave the consent had the authority to consent and did so voluntarily. To determine whether the consent was given voluntarily, a court must conduct a factual inquiry and look at the "totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Id.* at 226. Some of the factors the Court should consider include: the defendant's age, maturity, education, intelligence, experience; the officer's conduct, the number of officers present; and the duration, location, and time of the encounter. *United States v. Brugal*, 209 F.3d 353, 362 (4th Cir. 2000); *see also Schneckloth*, 412 U.S. at 226 (listing as factors the defendant's age and education level, the lack of advice on his constitutional rights, the length of detention, the nature of the questioning, and whether physical punishment was involved). Knowledge of right to refuse is only one factor to take into account; the Government "is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." *Schneckloth*, 412 U.S. at 226, 249.

Defendant argues that he never gave Officer Hand consent to search his vehicle. He argues that there is no audible consent given by him on the video and

that if he had given consent, it would have been audible on the video because Officer Hand's comments are all captured clearly and Officer Hand had the option of removing his portable microphone from his belt and holding it up to Defendant to capture his response. Defendant points out that Officer Hand did remove his microphone from his belt and hold it up to Defendant approximately fifteen minutes later when he had Defendant and Howard look into the camera and state that they knew they were not under arrest.

Upon review of the video, the Court disagrees with Defendant's assessment of the video. While it is barely audible, the Court does hear Defendant respond "no" to Officer Hand's question, "Do you have a problem with me searching your truck?" (Jt. Ex. 1, 22:14:25–22:14:28.) Additionally, even if the Court were to agree that Defendant's response is not audible, the Court finds that Officer Hand's testimony—that Defendant did give consent to search the vehicle—is believable and credible. *See United States v. Meikle*, 407 F.3d 670, 674 (4th Cir. 2005) ("The district court heard the testimony of [the officer] *ore tenus* in open court. The judge saw the witness and heard him testify. That adds considerable force to the fact finding of the district court in this case."). Therefore, this Court finds that Defendant did give consent to search the vehicle.

B.

As to Defendant's second argument, this Court holds that Defendant's consent was given freely and voluntarily and was not the result of police coercion.

Defendant argues that the consent, if given, was not voluntary and was the result of police coercion. Defendant did not provide any testimony during his hearing on this issue and instead consistently stated that he had never given consent to Officer Hand. Defendant argues, in his memorandum, that when he allegedly gave consent it was the middle of the night, neither he nor Howard would have felt that they could reach anyone for legal assistance, they were pulled over into the center median of a large interstate, two "uniformed and armed officers leaned into the driver[']s[] and passenger[']s[] side windows" and shined flashlights into his face when they questioned him, and the lights of the police cars were flashing throughout the stop. In these circumstances, Defendant argues, his consent was not voluntary but, instead, a result of police coercion. Additionally, Defendant argues that due to the circumstances, it is "unreasonable to expect him to know his rights or how to protect them . . . ." In fact, Defendant argues that the consent is inadequate because "no advice was given by the State agents as to Defendant's Constitutional rights relative to this alleged consent to search." Finally, Defendant urges the Court that consent to search, "even if voluntarily given, is subject to a higher level of scrutiny if it is given during an unlawful seizure." (Reply to Response 8, ECF No. 108) (citing *United States v. Gooding*, 695 F.2d 78 (4th Cir. 1982)).)

The Government has established that Defendant is a thirty-two year old adult; that Defendant was detained for less than twenty minutes before he was asked for

consent; that Defendant was questioned as to his and the driver's travel plans and the purpose of their trip; that the officers never drew their weapons; and that there were only two officers present before and during the time Defendant gave consent.

This Court holds that the Government has met its burden of establishing that Defendant gave consent freely and voluntarily. Defendant's memorandum describes a routine traffic stop. One would expect an officer to use a flashlight when the stop occurs in the evening hours and would expect that, if they are pulled onto the side of a busy highway in the middle of the night, the officer will keep his blue lights on to alert other drivers of his and Defendant's presence on the side of the highway. The stop lasted less than twenty minutes—long enough for Officer Hand to run license checks and issue the warning to Howard. There is no evidence to suggest that Defendant has a diminished capacity or suffers from any other characteristics that would make him less likely to understand and know the law or more likely to feel coerced by law enforcement. While officers did not inform Defendant of his right to refuse consent, they were not required to do so. The two officers never drew their weapons and there was no physical force used on either Defendant or Howard before consent was given. Defendant was free to refuse consent to the officers, but instead he chose to freely and voluntarily give Officer Hand consent to search his vehicle. Finally, as outlined in the following section, Defendant gave consent during a voluntary encounter with SCSTP and not during an unlawful

seizure; therefore, the Court is not required to apply a higher level of scrutiny to Defendant's consent.

C.

As to Defendant's final argument, the Court finds that Officer Hand properly terminated the traffic stop and that Defendant gave consent to search the vehicle after the traffic stop became a consensual encounter. The Fourth Circuit held in *United States v. Rusher*, 966 F.2d 868, 876–77 (4th Cir. 1992), that an officer may request a driver's license and vehicle registration, run a computer check, and issue a citation as part of a routine traffic stop, but, "[a]ny further detention for questioning is beyond the scope of the *Terry* stop[3] and therefore illegal unless the officer has reasonable suspicion of a serious crime." Reasonable suspicion requires the officer to "articulate more than an 'inchoate and unparticularized suspicion or hunch of criminal activity.'" *Brugal*, 209 F.3d at 359 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000)).

However, once the traffic stop becomes a consensual encounter, a *Terry* inquiry is not necessary because a consensual encounter does not implicate the Fourth Amendment. *Rusher*, 966 F.2d at 877. The Fourth Circuit has held that an encounter is consensual if a "reasonable person would have felt free to decline the

---

[3] A traffic stop should be analyzed under the same rubric as *Terry v. Ohio*, 392 U.S. 1 (1968). *See Berkemer v. McCarty*, 468 U.S. 420, 439 (1984) ("[T]he usual traffic stop is more analogous to a so-called '*Terry* stop.'"); *see also United States v. Rusher*, 966 F.2d 868, 875 (4th Cir. 1992) (stating that an "ordinary traffic stop is . . . a limited seizure more like an investigative detention than a custodial arrest" and analyzing the traffic stop under *Terry*).

officers' requests or otherwise terminate the encounter." *Id.* (citing *Florida v. Bostick*, 501 U.S. 429, 435–36 (1991)).[4] This "'reasonable person' test presupposes an *innocent* person." *Bostick*, 501 U.S. at 438.

Additionally, mere questioning by officers, when a stop is over and its purpose served, does not amount to a seizure. *See id.* at 434 ("[M]ere police questioning does not constitute a seizure."); *United States v. Sullivan*, 138 F.3d 126, 131 (4th Cir. 1998) (holding the same). "'Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen'" may a court conclude that a 'seizure' has occurred. *Bostick*, 501 U.S. at 434 (quoting *Terry*, 392 U.S. at 19). "A court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Id.* at 439.

---

[4] This Court does not use the "free to leave" analysis that is most commonly used in traffic stop cases because, like in *Bostick*, Defendant's freedom of movement was restricted by a factor independent of police conduct. *See Bostick*, 501 U.S. at 435–437. In this case, although Officer Hand had already returned Howard's license and registration and issued Howard his warning, Howard still had not returned to the vehicle. Defendant would not have felt free to drive off without Howard returning to the vehicle. Defendant's inability to "leave," however, was not a result of police conduct but a result of an independent factor. *See, e.g.*, *Bostick*, 501 U.S. at 435–37 (holding that the defendant had not been free to leave due to an independent factor when police officers asked defendant, while on a bus about to depart, if they could search through his luggage); *INS v. Delgado*, 466 U.S. 210, 218 (1984) (holding that the defendant, who had been detained at work, had not been free to leave due to an independent factor when INS agents stood near the building's exits while other agents walked through the building, because "when people are at work their freedom to move about has been meaningfully restricted").

Courts have consistently held encounters to be consensual where the officer has already returned the license and registration to the individual before initiating questions outside of the scope of the traffic violation. *See, e.g.*, *Ohio v. Robinette*, 519 U.S. 33, 35–36, 40 (1996) (holding that once the officer returned the license to the defendant and issued the defendant a warning, the encounter became consensual even though the officer did not tell the defendant that he was free to go); *United States v. Whitney*, No. 09-4858, 2010 WL 3245803, at *4 (4th Cir. Aug. 17, 2010) (per curiam) (holding that the defendant consented to further questioning at the end of the traffic stop where defendant's license and registration had already been returned to him and where there was no indication that the officer had made threats or a show of authority to prompt action by the defendant); *United States v. Farrior*, 535 F.3d 210, 219 (4th Cir. 2008) (noting that returning the license and registration "strongly indicates that the encounter was consensual and that no seizure occurred"); *Meikle*, 407 F.3d at 673 ("The officer had returned [the defendant]'s license and registration, had shaken [the defendant]'s hand, and [the defendant] began walking back to his car. It was clear that [the defendant] was free to go."); *United States v. Weaver*, 282 F.3d 302, 310 (4th Cir. 2002) (noting that an officer's "retention of a citizen's identification or other personal property or effects is highly material"); *United States v. Lattimore*, 87 F.3d 647, 653 (4th Cir. 1996) (en banc) (stressing the fact that the officer did not question the defendant "until after the officer had issued the citations and returned [the defendant]'s

driver's license"); *Rusher*, 966 F.2d at 877 (affirming the district court's holding that the officer had ended the detention of the defendant and begun a consensual encounter before questioning the defendant where the officer had returned the license and registration, issued a ticket and warning, and told the defendant he was free to go before he asked the defendant if he could search his vehicle).

Finally, the Supreme Court has held that an officer is not required to inform a driver that he is free to go before a consent search may be deemed voluntary. *Robinette*, 519 U.S. at 39–40 ("[I]t [would] be unrealistic to require police officers to always inform detainees that they are free to go before a consent to search may be deemed voluntary."); *see also Meikle*, 407 F.3d at 673–74 (holding that the defendant knew he was free to leave even though the officer had not told the defendant that he was free to leave).

Here, the encounter was voluntary and the seizure had ended. Therefore, the Court need not inquire into whether Officer Hand had reasonable suspicion to extend the traffic stop. Officer Hand returned the driver's license and the rental agreement to Howard, returned Defendant's license to him, and informed Defendant that he had returned the rental agreement to Howard. Only then did Officer Hand begin questioning Defendant. Officer Hand was not required to tell the driver or Defendant that they were free to go. Neither officer restrained Defendant through a use of force or by a show of authority. Up until this point in the traffic stop, Officer Hand had mainly questioned and interacted with Howard. Under these

circumstances, a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter. With his license returned, Defendant was no longer seized. Although he could not leave because the vehicle's driver was still standing behind the car, Defendant still had the choice of declining Officer Hand's request. Defendant chose to have a dialogue with the officer. Because Officer Hand properly terminated the traffic stop before asking Defendant for his consent, Defendant's argument is without merit. Defendant was no longer seized when he gave consent; instead, Defendant gave consent freely and voluntarily during a consensual encounter with SCSTP.

### III.

Finally, Defendant asserts that the officers failed "to advise or to adequately advise [him] . . . of [his] Constitutional rights under *Miranda* before" officers questioned him. This Court holds that there was no violation of Defendant's rights because the officers were not required to give Defendant *Miranda* warnings.

"[P]ersons temporarily detained pursuant to [ordinary traffic] stops are not 'in custody' for the purposes of Miranda." *Berkemer v. McCarty*, 468 U.S. 420, 439–40 (1984). However, "[i]f a motorist who has been detained pursuant to a traffic stop thereafter is subjected to treatment that renders him 'in custody' for practical purposes, he will be entitled to the full panoply of protections prescribed by *Miranda*." *Id.* "A person is 'in custody' if he 'has been formally arrested or if he is questioned under circumstances in which his freedom of action is curtailed 'of the

degree associated with a formal arrest.'" *United States v. Leong*, No. 96-4876, 1997 WL 351214, at *2 (4th Cir. June 26, 1997) (quoting *United States v. Leshuk*, 65 F.3d 1105, 1108 (4th Cir. 1995)). "In determining whether an individual was in custody, a court must examine all of the circumstances surrounding the interrogation, but the 'ultimate inquiry is simply whether there [was] a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest.'" *Stansbury v. California*, 511 U.S. 318, 322 (1994) (per curiam) (quoting *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam)). The "initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by either the interrogating officers or the person being questioned." *Id.* at 323.

In *Rusher*, a couple was pulled over by a Highway Patrol officer when he noticed that the occupants of the vehicle did not have seatbelts on and that the truck did not have a proper license plate. 966 F.2d at 872. After the officer issued a ticket, returned the driver's license to the driver, and told the driver he was free to go, the officer asked the driver if there was anything illegal in the vehicle and then asked for consent to search the vehicle. *Id.* As the defendants, passengers in the vehicle, got out, the officer asked one defendant if the purse sitting in the truck was hers and if he could search it. She gave oral consent. *Id.* The officer found a crystal, white rock substance in the purse during his search. *Id.* As he went to his vehicle to call for backup, the defendant followed him and asked him

what he was doing. *Id.* In response, the officer asked her if the rock substance was hers. *Id.* She replied that it was, that it was only a little dope, and that the other passengers did not know anything about it. *Id.* At this point, the officer placed her under arrest and read her *Miranda* warnings to her. *Id.*

The defendant in *Rusher* claimed a Fifth Amendment violation on appeal, based upon these facts. The Fourth Circuit dismissed her claim in a footnote, holding that the pre-arrest statement had been properly admitted by the district court because the Supreme Court had held in *Berkemer*, 468 U.S. at 439–40, that "the roadside questioning of a motorist detained pursuant to a routine traffic stop does not constitute custodial interrogation for purposes of *Miranda* doctrine. *Rusher*, 966 F.2d at 873 n.2.

Here, as in *Rusher*, the officer had already terminated the traffic stop. The request for consent to search came after Defendant voluntarily entered into a consensual encounter with the officer. Here, as in *Rusher*, the officers questioned Defendant about suspicious items found in a wallet/purse in the vehicle. (Jt. Ex. 1, 22:24:05.) At the time, Defendant was not formally arrested, he still maintained access to his drivers license and the driver of the vehicle still held his own license along with the rental agreement and the warning citation. There were only two officers present and they asked questions to clarify why Defendant and Howard would have a wallet with someone else's name on it in their vehicle. Neither officer had suggested that Defendant or Howard were under arrest or were about to be

placed under arrest. A reasonable person, a standard which presupposes an innocent person, would not have interpreted these acts as being placed under arrest or as limiting their liberty to terminate the interrogation.

When asked during the hearing why Officer Hand asked Defendant and Howard about the wallet's owner, he responded that he asked out of concern for identity theft and also because he wondered who the unknown person was in connection to Defendant and Howard. However, an officer's subjective beliefs do not inform this inquiry; only what a reasonable person would have thought in those circumstances matters. Because a reasonable person would have understood that Officer Hand was trying to clarify why an unknown person's wallet was in the car, Defendant was not "in custody" at the time Officer Hand questioned him about the wallet. Therefore, the officers were not required to read Defendant his *Miranda* warnings at that time.

In conclusion, this Court holds that the traffic stop was not pretextual and was based on probable cause that Howard had violated traffic laws; that Defendant's consent was given freely and voluntarily; that his consent was given after the stop became a consensual encounter and was no longer a seizure; and that Defendant's Fifth Amendment rights were not violated when officers questioned him about the wallet owner's identity and contact information before reading Defendant his *Miranda* warnings.

IT IS THEREFORE ORDERED that Defendant's Motion to Suppress is DENIED.

IT IS SO ORDERED.

                                              G. Ross Anderson, Jr.
                                              Senior United States District Judge

October 28, 2010
Anderson, South Carolina